UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STANISLAW KROPIEWNICKI,

                    Petitioner,

vs.                                     Case No. 3:13-cv-710-J-39MCR

SECRETARY, DOC, et al.,

                    Respondents.

_____

## ORDER

### I.  STATUS

Stanislaw Kropiewnicki, the Petitioner in this case, challenges a 2008 (St. Johns County) conviction for DUI manslaughter (enhanced).  He is proceeding on an Amended Petition (Doc. 10) and is represented by counsel.  He raises four grounds in his Amended Petition: (1A) an involuntary plea because it was made on the basis of a promise by trial counsel that Petitioner would be sentenced by Judge Wolfe, who was represented by counsel to be a more lenient sentencing judge; (1B) trial counsel interfered with Petitioner's right to choose to withdraw his plea by refusing to honor Petitioner's written instruction to withdraw the plea because Petitioner would not be sentenced by Judge Wolfe, the more lenient judge; (2A) the ineffective assistance of counsel because counsel failed to move to dismiss the information or otherwise challenge the introduction of evidence derived directly or indirectly from statements made by the defendant during the traffic accident investigation phase of the case; and (2B) the ineffective

assistance of counsel for failure to raise the Fifth Amendment and Florida statutory immunity issue, resulting in an involuntary plea. The four grounds will be addressed by the Court. <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992). The Court notes that the state court conducted an evidentiary hearing on the claims raised in the third and fourth grounds. The Court concludes that no further evidentiary proceedings are required in this Court.

Respondents filed a Response to Petition (Response) (Doc. 11), asserting the Amended Petition should not be granted. They also submitted an Appendix (Doc. 12).[1] Petitioner filed an Amended Reply to Respondents' Response (Doc. 20). <u>See</u> Orders (Docs. 8 & 22). Respondents do not contend that the Petition is untimely filed. Response at 6. They also recognize that all four grounds are apparently exhausted. <u>Id</u>. at 8.

## II.  STANDARD OF REVIEW

Recently, the Eleventh Circuit set forth the appropriate analysis when undertaking habeas review pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA):

> review of the state habeas court's decision is constrained by § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "imposes a highly deferential standard for evaluating state court rulings

---

[1] The Court hereinafter refers to the exhibits contained in the Appendix as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix. Otherwise, the page number on the particular document will be referenced.

and demands that state-court decisions be given the benefit of the doubt." Bishop v. Warden, GDCP, 726 F.3d 1243, 1253 (11th Cir. 2013), cert. denied, --- U.S. ----, 135 S.Ct. 67 (2014) (internal quotation omitted). Pursuant to the AEDPA, this Court is prohibited from granting relief if a state court has adjudicated a claim on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," id. § 2254(d)(2). This Court will analyze Petitioner's claims pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).

French v. Warden, Wilcox State Prison, No. 12-15385, 2015 WL 3857639, at * 3 (11th Cir. June 23, 2015). See Harrington v. Richter, 562 U.S. 86, 98 (2011) (setting forth the same three exceptions to the bar to relitigation of any claim adjudicated on the merits in state court).

The parameters for deferential review under AEDPA are set forth as follows:

> A state-court decision represents an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule from Supreme Court cases but unreasonably applies the established law to the facts of the case. Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003). The Supreme Court has repeatedly emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." Cullen v. Pinholster, ---

- 3 -

> U.S. ----, ----, 131 S.Ct. 1388, 1411, 179
> L.Ed.2d 557 (2011) (quotation marks omitted).
>
> A state court's determination of the
> facts is unreasonable only if no fairminded
> jurist could agree with the determination. <u>Lee
> v. Comm'r, Ala. Dep't of Corr.</u>, 726 F.3d 1172,
> 1192 (11th Cir. 2013), <u>cert</u>. <u>denied</u>, --- U.S.
> ----, 134 S.Ct. 1542, 188 L.Ed.2d 557 (2014).
> Findings of fact by a state court are presumed
> to be correct, and a habeas petitioner must
> rebut that presumption by clear and convincing
> evidence. 28 U.S.C. § 2254(e)(1); <u>Pope v.
> Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284
> (11th Cir. 2012). In determining how the state
> courts resolved a habeas petitioner's claims,
> we look to the last state court that rendered
> a judgment in the case. <u>Pope</u>, 680 F.3d at
> 1284-85.

<u>Stoddard v. Sec'y, Dep't of Corr.</u>, 600 F. App'x 696, 703 (11th Cir.

2015) (per curiam), <u>petition for cert</u>. <u>docketed</u>, (U.S. June 12,

2015) (No. 14-10198).

In this opinion, the Court will give a presumption of

correctness of the state courts' factual findings unless rebutted

with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and,

the Court will apply this presumption to the factual determinations

of both trial and appellate courts. <u>See</u> <u>Bui v. Haley</u>, 321 F.3d

1304, 1312 (11th Cir. 2003).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Amended Petition, Petitioner claims he received the

ineffective assistance of counsel in violation of the Sixth

Amendment to the United States Constitution. In order to prevail

on this Sixth Amendment claim, he must satisfy the two-pronged test

- 4 -

set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>See</u> <u>id</u>. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

## IV.  PROCEDURAL HISTORY

To provide historical context to Petitioner's grounds for relief, the Court presents a brief summary of the case.  The Florida Highway Patrol Traffic Homicide Investigation, prepared by Peter G. Young, Cpl, found that Petitioner was under the influence

- 5 -

of alcoholic beverages, and his normal faculties were impaired with a finding 0.238 grams of ethyl alcohol per 100 milliliters based on the blood specimen. Ex. 12, Exhibit B at 46-47. He also concluded that Petitioner sustained non-incapacitating injuries, including a small cut on his nose from striking the steering column, and red marks on his stomach caused by airbag deployment. Id. at 47. He stated that the motorcycle driver sustained fatal injuries. Id.

The narrative in the Charging Affidavit similarly stated that Petitioner was under the influence of alcoholic beverages, his normal faculties were impaired, his blood alcohol level was .20 or above, and Petitioner did cause or contribute to the cause of death of the victim. Id. at 87. A Felony Warrant issued based on the oath of Cpl. Young before Investigator R. Hardwick. Id. at 88.

On August 28, 2007, Petitioner was charged by information with DUI manslaughter (enhanced). Ex. 1. On April 21, 2008, the trial judge, the Honorable Wendy Berger, conducted a plea colloquy and accepted Petitioner's plea of no contest. Ex. 3. At the outset of the proceeding, the court swore in the Polish interpreter (English to Polish and from Polish to English) for Petitioner. Id. at 212-13. Bryan L. Shorstein, Petitioner's counsel, announced that his client was withdrawing his previously entered plea and pleading no contest to one count of DUI manslaughter with an enhancement for the blood alcohol level. Id. at 213. The court noted that it was a second degree felony. Id. Petitioner was sworn and assured the court that he could understand most of what was being said without

- 6 -

the aid of an interpreter. <u>Id</u>. at 214. The court advised him to let her know if he needed the interpreter or if he was having difficulty understanding anything that was being said. <u>Id</u>.

Petitioner confirmed that he wanted to plead no contest. <u>Id</u>. The court advised him that the punishment for a second degree felony is up to fifteen years in prison and/or a $10,000 fine or both.[2] <u>Id</u>. Petitioner informed the court that he had a high school education and two years of vocational classes in engineering construction. <u>Id</u>. at 216. He assured the court that with the assistance of the interpreter, he understood everything. <u>Id</u>. Upon inquiry, he told the court that he had not been treated for any mental or emotional disability and he did not suffer from any mental illness. <u>Id</u>. at 217. He told the court that he had not consumed any drugs or alcohol within the last twenty-four hours. <u>Id</u>. The court went over Petitioner's constitutional rights with the aid of the interpreter. <u>Id</u>. at 217-19.

The court explained, "[p]leas of guilty or no contest admit the truth of the charge. Pleas of not guilty would deny the charge." <u>Id</u>. at 219. Petitioner responded that he understood. <u>Id</u>. Petitioner confirmed that he believed the plea of no contest was in his best interest. <u>Id</u>. at 220. Petitioner denied being forced or pressured or intimidated. <u>Id</u>. He stated that no one had

---

[2] The Criminal Punishment Code Scoresheet sentence computation showed a lowest permissible prison sentence as 124.6 months, and a maximum sentence of fifteen years. Ex. 4.

promised him anything to get him to enter the plea.   Id.
Petitioner stated he was satisfied with the representation of Mr.
Shorstein and Mr. Lee.   Id. at 220-21.

The state provided a factual basis for the plea to the DUI
manslaughter charge.   Id. at 221.   The defense made no exceptions
or objections to the facts related by the state.   Id. at 222.   The
prosecutor said that at sentencing the state would not have a
specific recommendation for a term of years.   Id.   Mr. Shorstein
announced to the court that counsel had gone over with Petitioner,
in detail, what the possibilities would be at sentencing.   Id.

The court inquired: "Mr. Kropiewnicki, has anybody coached you
or told you to testify falsely based on any promise or on any
understanding that's not been told to me."   Id.   Petitioner
responded in the negative.   Id.   The court then asked if Petitioner
still wished to enter his plea of no contest.   Id. at 222-23.
Petitioner responded in the affirmative.   Id. at 223.   The court
found Petitioner to be alert and intelligent, and that he
understood the nature and the consequences of entering the plea.
Id.   She further found a factual basis for the plea, and accepted
the entry of the plea.   Id.   The court then asked about scheduling
the sentencing proceeding, and proceeded to schedule the
sentencing.   Id. at 223-26.

During the sentencing proceeding, Petitioner addressed the
court via interpreter and said: "[t]oday we [are] going to talk
about sentence, if that would help heal, you know, in other words,

- 8 -

you know, help them out a little bit, I would order for me today a life sentence." Ex. 5 at 141.   Mr. Lee implored the court to sentence Petitioner to the low end of the guidelines. Id. at 146. The state said it was seeking a guideline sentence. Id.   The court found no reason to depart from the guidelines, but she did not believe the low-end of the guidelines was appropriate. Id. at 151. She previously noted that Petitioner had an old DUI case, id. at 150, and no prior felony record. Id. at 151.   She adjudicated Petitioner guilty and sentenced him to fourteen years in prison followed by one year of community control.   Id.   On June 5, 2008, the court entered its judgment and sentence.   Ex. 6.

On direct appeal, the Assistant Public Defender filed an Anders brief.[3]   Ex. 7.   Petitioner moved to voluntarily dismiss his appeal.   Ex. 9.   On February 5, 2009, the Fifth District Court of Appeal dismissed the appeal.   Ex. 10.   Petitioner filed a motion for post conviction relief pursuant to Rule 3.850, Fla. Stat.   Ex. 11.   Attached to the motion were two exhibits, an undated letter purported to be from Petitioner to attorneys Shorstein and Lee, and the Florida Highway Patrol Accident Report and Affidavit for Arrest (Charging Affidavit and Felony Warrant).   Id.   The state responded. Ex. 13.   Petitioner replied.   Ex. 14.   Petitioner supplemented his reply with the Affidavit of Maria Kropiewnicki.   Ex. 15.   The court, in its Order on Motion to Vacate Judgment and Sentence,

---

[3] Anders v. California, 386 U.S. 738 (1967).

summarily denied grounds 1A and 1B.  Ex. 16 at 208.  The court scheduled an evidentiary hearing on grounds 2A and 2B.  Id.  The court conducted an evidentiary hearing on June 15, 2011.  Ex. 17.  Petitioner testified.  Id. at 7-28.  The state called Petitioner and attorney Bryan Shorstein.  Id. at 30-61.  On March 29, 2012, the court denied grounds 2A and 2B.  Ex. 18.  Petitioner appealed.  Ex. 19.  The state filed an answer brief, declining to respond to grounds 1A and 1B, and fully responding to grounds 2A and 2B.  Ex. 20.  The Fifth District Court of Appeal per curiam affirmed on June 4, 2013.  Ex. 21.  The mandate issued on July 24, 2013.  Ex. 24.

### V.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Grounds 1A and 1B

Grounds 1A and 1B are interrelated and will be addressed jointly.  In ground 1A, Petitioner claims he entered an involuntary plea because it was made on the basis of a promise by trial counsel that Petitioner would be sentenced by Judge Wolfe, who was represented by counsel to be a more lenient sentencing judge.  In ground 1B, Petitioner claims trial counsel interfered with Petitioner's right to choose to withdraw his plea by refusing to honor Petitioner's written instruction to withdraw the plea because Petitioner would not be sentenced by Judge Wolfe.

Petitioner asserts that he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution resulting in an involuntary plea.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test

set forth in <u>Strickland</u>, requiring that he show both deficient performance and prejudice.  In the context of his ineffective assistance challenge to the voluntariness of his no contest plea, Petitioner must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial, as set forth in <u>Hill</u>.

Petitioner adequately exhausted his claims in the state court proceedings.  He raised both claims in his Rule 3.850 motion.  The trial court denied relief, and the Fifth District Court of Appeal per curiam affirmed.

The trial court thoroughly addressed these grounds and denied the claims without conducting an evidentiary hearing.  The court provided the background for the claims:

> In Ground 1A of Defendant's Motion, Defendant claims that his plea was not freely, voluntarily, knowingly, and intelligently made because it was made on the basis of a promise by Defendant's trial counsel that he would be sentenced by Judge Wolfe, who was represented by counsel to be a more lenient sentencing Judge, when in fact, Defendant was sentenced by Judge Berger to a near statutory maximum term of imprisonment.  In Ground 1B, Defendant claims that his trial counsel interfered with his right to choose to withdraw his no contest plea by refusing to honor Defendant's written instruction to withdraw Defendant's previously entered no contest plea when Defendant explained in writing to his counsel that he entered his guilty plea on the basis of counsel's promise that he would be sentenced by Judge Wolfe, an allegedly more lenient sentencing Judge.  He also claims he told counsel he was not comfortable being sentenced by Judge Berger and instructed counsel to immediately withdraw his plea because the plea

had been entered on the basis of a
misunderstanding and without a full
understanding of its consequences.

Ex. 16 at 205-206.

The court reviewed and referenced the plea colloquy:

Defendant entered a plea before the
undersigned on April 21, 2008. Prior to
entering his plea, Defendant was informed that
he was pleading to a second degree felony
punishable by up to 15 years in prison. See
Plea Hearing Transcript dated April 21, 2008,
p. 5, attached hereto as Appendix A.
Defendant was asked if anyone had promised him
anything to get him to enter the plea, and he
responded "no, no". Id. at 11. Defendant's
attorney stated that he and his client had
gone over what the possibilities were at
sentencing, what the State intended to say,
and the fact that the defendant and his
witnesses would get to speak at sentencing,
and Defendant's attorney indicated that his
client understood all of that. Id. at 13.
After this discussion, the Defendant stated he
still wished to enter his plea and the Court
accepted his plea. Id. at 13-14. After
entering his plea, there was a discussion
regarding scheduling the sentencing hearing
and the sentencing proceedings. During this
discussion, the defendant never stated any
objection to the undersigned proceeding with
the sentencing. Id. at 14-17.

Id. at 206.

Thereafter, the court addressed the matter of the letter

attached to the Rule 3.850 motion. The court noted that although

the letter was addressed to the Law Offices of Shorstein and Lee

and signed by Petitioner, it was not dated. Id. The court further

noted that Petitioner was sentenced two weeks after entering his

plea. Id. at 207. The court pointed out that at the sentencing

hearing Petitioner had "several opportunities to speak and say what he wanted to say to the Judge; however, Defendant never raised any objection to the undersigned sentencing the defendant, and Defendant never gave any indication that he expected Judge Wolfe to preside over his sentencing." <u>Id</u>. at 207 (citation omitted). Finally, the court recognized that Petitioner actually offered to serve a life sentence if it would help the victim's family heal. <u>Id</u>. (citation omitted).

With regard to Petitioner's claims of ineffective assistance of counsel resulting in an involuntary plea, the court held:

> Defendant has failed to demonstrate how he was prejudiced by his counsel's alleged deficient performance. The defendant was fully aware of the maximum sentence he was facing, and Defendant had ample opportunity to express an objection to the undersigned proceeding with sentencing. Furthermore, Defendant has failed to demonstrate that he would have insisted on going to trial had he known that he would not be sentenced by Judge Wolfe. As stated previously, Defendant indicated he was willing to take a life sentence if it would help the family heal. Defendant's statement does not indicate that his plea was entered with the expectation of, or hope for, leniency. Accordingly, Defendant has failed to state claims sufficient to warrant an evidentiary hearing as to Grounds 1A and 1B.

<u>Id</u>. at 207.

The record shows that the Petitioner faced a prison sentence within a very narrow guideline sentencing range of 124.6 months to fifteen years. Ex. 4. At the post-conviction evidentiary hearing, Mr. Shorstein testified that, at best, they were hoping for "a

- 13 -

little bit of a break," like perhaps twelve years in prison rather than fifteen years. Ex. 17 at 60. At sentencing, the court noted that Petitioner had a prior DUI but no prior felony record. Ex. 5 at 150-51. Perhaps of more import, the court found significant that Petitioner's blood alcohol level was "three times the legal limit." Id. at 150. Petitioner knew that if he proceeded to trial on the DUI manslaughter (enhanced) charge and lost, he would face up to fifteen years in prison. In order to avoid that possible sentence, Petitioner decided to plead no contest. At sentencing, Mr. Lee reminded the court that Petitioner did not put the victim's family through a trial, and requested an appropriate sentence at the low end of the guidelines followed by some probation to assure that he was not drinking or driving. Ex. 5 at 146. The court sentenced Petitioner to fourteen years in prison followed by one year of community control. Id. at 151. In essence, the court sentenced Petitioner to a term of years slightly over the expressed, best hoped for a break under the circumstances.

In order to satisfy the prejudice prong of the two-part Strickland test in a plea case, Petitioner must show that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and would have insisted on proceeding to trial. Even assuming deficient performance, Petitioner has not shown prejudice. The evidence was overwhelmingly against Petitioner, and he hoped that by pleading no contest he would receive some mercy from the court during sentencing. Judge Berger

- 14 -

found that Petitioner "failed to demonstrate that he would have insisted on going to trial had he known that he would not be sentenced by Judge Wolfe." Ex. 16 at 207. Instead, during the sentencing proceeding, Petitioner said he was willing to accept a life sentence if it would help the victim's family. <u>Id</u>.

Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. As noted by the trial court, Petitioner never objected to Judge Berger proceeding with sentencing even though he had ample opportunity to protest. Instead, it is quite apparent that Petitioner is simply dissatisfied with the sentence he received from Judge Berger as he had hoped for more significant leniency but did not receive it.

With regard to Petitioner's claim of ineffective assistance of trial counsel resulting in an involuntary plea, the state court's ruling is supported by controlling case law: <u>Strickland</u>, <u>Hill</u>, and progeny. Deference, under AEDPA, should be given to the state court's holding. Petitioner raised the issues in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. This Court concludes that the adjudication of the claims of ineffective assistance of counsel leading to an involuntary plea is not contrary to or an unreasonable application of <u>Strickland</u> and <u>Hill</u>, or based on an unreasonable determination of the facts.

- 15 -

## B.   Grounds 2A and 2B

In ground 2A, Petitioner claims he received the ineffective assistance of counsel because counsel failed to move to dismiss the information or otherwise challenge the introduction of evidence derived directly or indirectly from statements made by the defendant during the traffic accident investigation phase of the case.   In ground 2B, Petitioner raises the related claim of the ineffective assistance of counsel for failure to raise the Fifth Amendment and Florida statutory immunity issue, resulting in an involuntary plea.

Of significance, in its response to the Rule 3.850 motion, the state said that based on the exhibits provided by Petitioner in support of his post conviction motion, the only statement given by Petitioner referenced in the Florida Highway Patrol Traffic Homicide Investigation is the tape-recorded statement given to Officer Peter Young.[4]   Ex. 13 at 91.   The state argued that based on the observation by Officer Young that Petitioner carried a strong odor of alcohol, along with the tape-recorded statements of

---

[4] Upon a thorough review of the Florida Highway Patrol Traffic Homicide Investigation, the only statement given by Petitioner mentioned in the report is the tape-recorded statement obtained at the scene at 12:26 p.m.   Ex. 12, Exhibit B at 50.   Officer Young states that he detected a strong odor of alcoholic beverages on Petitioner's breath, and Petitioner said he had three beers that morning.   Id.   Officer Young mentions that when he arrived on the scene, he conferred with Trooper Howard about her knowledge of the traffic crash.   Id. at 48.   No mention is made of a statement by Petitioner to Howard concerning his alcoholic beverage intake.   Id.

the other witnesses at the scene that Petitioner exited the van following the accident, there is evidence which would have constituted sufficient probable cause obtained from independent and legitimate sources, even assuming Petitioner had made other statements to the officers about drinking.  Ex. 13 at 92.  In sum, the state urged the court to find that the officer was able to form an opinion as to the possible intoxication of Petitioner based on his own observations and the statements of witnesses of the accident, without relying on any pre-Miranda statements of Petitioner.  Id.  Furthermore, the state asserted that any such statements given by Petitioner were not relied upon by the officer in making his decision to arrest Petitioner.  Id.

At the evidentiary hearing, Petitioner testified that Trooper Howard asked him questions, including whether he had been drinking alcoholic beverages.  Ex. 17 at 8.  He stated that he responded in the affirmative.  Id.  Petitioner further testified that he felt he was compelled to answer her questions and she did not advise him otherwise.  Id. at 8-9.  He also testified that Officer Young took him to the car to be interrogated, and before the officer began to tape record Petitioner's statement, he asked if Petitioner had been drinking.[5]  Id. at 11.  Petitioner said he told the officer that he

_____

[5] Mr. Shorstein testified that [o]ur understanding was that the statements were made post Miranda."  Ex. 17 at 46.  Nevertheless, even if that were not the case, he concluded it did not make any difference in their assessment of the situation because at least three eyewitnesses saw Petitioner and provided damaging statements. Id. at 47.

did drink last night.  Id.  Again, Petitioner testified that he felt compelled to answer the officer's questions.  Id.  Finally, Petitioner testified that Mr. Shorstein never discussed the traffic accident report privilege with him.  Id. at 26.

After the state called Petitioner as a witness, on cross, his counsel asked Petitioner if he would not have pled guilty but "would have insisted on your lawyer presenting these arguments to the Court first, wouldn't you?"  Id. at 32.  Petitioner responded yes.  Id. at 33.  Petitioner was then asked, "[a]nd you would have insisted on these arguments being preserved for appeal, wouldn't you, if the Judge had denied them?"  Id.  Petitioner again responded yes.  Id.

The state called Mr. Shorstein as a witness.  His testimony confirms that he is very experienced criminal counsel.  He testified that he was employed with the State Attorney's Office from 1996 to 2003.  Id. at 35.  He said he did DUI death cases for about two years.  Id.  He handled seven to eight DUI manslaughter cases.  Id. at 36.  He testified that he then went into private practice in criminal defense.  Id.  He had been in private practice for eight years.  Id.

Specifically with regard to his representation of Petitioner, Mr. Shorstein testified that he spoke with him in terms that he would understand.  Id. at 39.  He explained to the court that there was no communication barrier at all.  Id.  Mr. Shorstein attested that he analyzed the case to determine whether there were any

- 18 -

suppression issues.  Id. at 41.  He testified that they discussed all the statements that were made, including the statements made in the patrol car.  Id. at 42.  He said that Petitioner never told him that he did not understand the Miranda warnings.  Id.  Mr. Shorstein said that his assessment of the suppression issues was:

> We didn't believe there were any suppressible issues.  I guess the issue at hand that seems to be talked about, if I can understand what's being said, although we go over that in any case the accident privilege or however it's called, although I will say I don't -- I probably didn't use the terms Kastigar[6] or immunity, due to the fact that there were multiple witnesses, you know, we explained to him that we could do certain things, the likelihood of those things winning, and the outcome ultimately in the case based on the overall strength of the case.

Id. at 43-44.  He said he explained that with the accident privilege other things may be "knocked out after it[.]"  Id. at 54.  He reiterated that fact.  Id. at 55-56.

The following question was asked:

> Q    And was it his decision not to file any pretrial motions?
>
> A    It was a group decision.  I mean, it was his decision as it's always the client's decision, but everyone talks about it.

---

[6] Kastigar v. United States, 406 U.S. 441, 459-60 (1972) (recognizing that the Fifth Amendment prohibits the use of evidence derived from compelled immunized testimony, "barring the use of compelled testimony as an 'investigatory lead,'" and imposing on the prosecution the burden to demonstrate that the evidence relied upon is derived from a source independent of that of the compelled testimony) (footnote omitted).

Id. at 44.

Mr. Shorstein explained that they discussed going to trial because there was going to be plea "straight up" and there "was a possibility that he could get the maximum or close to it, so because being that close to that we discussed trial a lot." Id. at 44.  Mr. Shorstein testified that he did not promise a particular outcome regarding the plea and sentencing proceedings.  Id. at 44-45.  He also said that the morning of the plea he spent forty-five minutes with his client discussing the consequences of pleading no contest.  Id. at 45.

With regard to the accident privilege, Mr. Shorstein says he covers it in every DUI case.  Id. at 47.  In this case, however, his assessment was that it would not have mattered because of the at least three eyewitnesses to the accident.  Id.  In particular Mr. Driscoll, one of the witnesses, testified that he watched the entire event and saw Petitioner stumble out of the vehicle and say he was not the driver.  Id. at 48.  Also, counsel believed that the high blood alcohol results were significant.  Id. at 47.

After the evidentiary hearing, the trial court addressed Petitioner's remaining two grounds.  The court noted that Petitioner "claims that his answers to questions asked during the traffic accident investigation phase were **expressly relied upon** to proceed to the criminal investigation phase of the case, and in turn, led to further self-incriminating statements and the blood draw evidence." Ex. 18 at 294 (emphasis added).  Of import, before

addressing the merits of Petitioner's claims, the trial court set forth the <u>Strickland</u> standard which must be met to prevail on a claim of ineffective assistance of counsel, and recognized that in order to satisfy the prejudice prong in plea cases, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded no contest and would have insisted on going to trial, referencing <u>Hill v. Lockhart</u>. Ex. 18 at 294.

In denying ground 2A, the trial court held:

> The claim in Ground 2A hinges upon Defendant's pre-Miranda and pre-criminal investigation phase statement that he had been drinking prior to the accident. Defendant argues that under section 316.066, Florida Statutes, he was required to answer the officer's question about whether he had been drinking, and therefore, this statement or any other incriminating statements made during the traffic crash investigation phase could not be used to proceed to the criminal investigation phase or as a basis for probable cause to request a blood draw. At the hearing, the Court heard testimony from the Defendant and from Defendant's trial attorney, Brian Shorstein, Esquire. **Defendant did not present any evidence to prove that his claim is meritorious.** <u>See</u> <u>Zakzewski v. State</u>, 866 So.2d 688, 694 (Fla. 2003) (holding that the defendant was required to prove that his claim was meritorious where the defendant claimed that his defense counsel failed to litigate a Fourth Amendment claim competently). **There was no evidence or testimony to show what statements or observations Corporal Young relied upon in forming reasonable suspicion to move to the DUI phase, and it is not clear from the record whether he relied upon statements protected by the accident report privilege.**

Ex. 18 at 295 (emphasis added).

The court noted that the attorneys discussed the traffic accident privilege with Petitioner, but they did not believe there were any suppressible issues "due to the multiple eyewitnesses." Id. at 295.   The court explained:

> Mr. Shorstein testified that he discussed with the Defendant the strengths and weaknesses of the case, explained various options, and the likelihood of prevailing on certain pretrial issues.   According to Mr. Shorstein, although it was a group discussion, ultimately, it was Defendant's decision not to file any pretrial motions and instead, enter a plea.

Id.

The court rendered the following decision with respect to ground 2A:

> Based on the testimony before the Court, the attachments to Defendant's motion, and the remainder of the record in this case, the Court finds that Mr. Shorstein did not act outside the broad range of reasonable assistance under prevailing professional standards in failing to file a motion to dismiss or a motion to suppress.   Defendant failed to establish that Mr. Shorstein was deficient for failing to file a motion to dismiss or a motion to suppress where evidence presented did not show that such claim would be meritorious.   Further, it is clear from the testimony that Mr. Shorstein thought a motion to dismiss or a motion to suppress based on the claimed use of Defendant's immunized statements would be futile due to the eyewitnesses['] testimony. Therefore, Ground 2A will be denied.

Id. at 296.

With regard to ground 2B, the court credited the testimony of Mr. Shorstein over that of Petitioner. Id. at 296. The court found that based on his testimony, Mr. Shorstein had discussions with Petitioner about the accident report privilege, and Petitioner understood the matters discussed. Id. The court held that Petitioner failed to establish that his plea was involuntary. Id. The court also found that the claim raised in ground 2B should also be denied for the reasons provided in ground 2A. Id.

Petitioner appealed the denial of his Rule 3.850 motion. Ex. 19. In its response, the state expressly pointed out that Petitioner failed to satisfy Hill by failing to assert or testify that he would have rejected the plea and gone to trial, but instead testified that he would have wanted counsel to proceed with pretrial motions before entering a plea to preserve his claim for appellate review. Ex. 20 at 21. The state further argued that the combination of Officer Young's own observations in conjunction with the observations of the eyewitnesses would have supported a probable cause determination. Id. at 22. The Fifth District Court of Appeal affirmed per curiam. Ex. 21.

With regard to Petitioner's claim of ineffective assistance of trial counsel resulting in an involuntary plea, the state court's ruling regarding grounds 2A and 2B is supported by controlling case law: Strickland, Hill, and progeny. Deference under AEDPA should be given to the state court's holding. Petitioner raised the issues in his post conviction motion, the trial court denied the

motion, and the appellate court affirmed.   This Court concludes that the adjudication of these claims of ineffective assistance of counsel leading to an involuntary plea is not contrary to or an unreasonable application of Strickland and Hill, or based on an unreasonable determination of the facts.

As related in State v. Cino, 931 So.2d 164 (Fla. 5th DCA 2006), the state is permitted to use the officer's observations and statements by persons other than the defendant.   The statute at issue "only prohibits the State from using as evidence at trial either the crash report or *statements* made to law enforcement during a traffic investigation by persons involved in the crash." Id. at 167.

As noted by this Court,

> Pursuant to Section 316.1933(1)(a), Florida Statutes,
>
> > [i]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, ... has caused the death or serious bodily injury of a human being, a law enforcement officer shall require the person driving or in actual physical control of the motor vehicle to submit to a test of the person's blood....
>
> Fla. Stat. § 316.1933(1)(a) (2002). Section 316.066(4), Florida Statutes mandates that statements made to investigative officers by a person involved in an accident in order to complete a crash report as required by the statute are not admissible as evidence in any criminal trial. Evans v. Hamilton, 885 So.2d

- 24 -

> 950, 950 (Fla. 4th DCA 2004). However, "section 316.066(4) only prohibits the State from using as evidence at trial either the crash report or statements made to law enforcement during a traffic investigation by persons involved in the crash." State v. Cino, 931 So.2d 164, 167 (Fla. 5th DCA 2006). The statute provides immunity only to "'such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under section 316.066(1) and (2) [to report an accident]' so as to avoid a Fifth Amendment violation." Evans, 885 So.2d at 950 (quoting Brackin v. Boles, 452 So.2d 540, 544 (Fla. 1984)). "The test to be applied in determining whether the accident report privilege is applicable is whether the privilege against self-incrimination was violated by requiring the person involved in the accident to answer the questions posed." Id. at 950-51.

Park v. Sec'y, Dep't of Corr., No. 6:10-cv-1031-Orl-37KRS, 2013 WL 375473, at *5 (M.D. Fla. Jan. 31, 2013). In Park, this Court concluded that even in the absence of any statements of the petitioner, based on the officer's observations at the scene, probable cause existed to believe that the petitioner was the driver and was inebriated, leading to the conclusion that the blood draw was permissible and a motion to suppress would have been unsuccessful. Id.

In the case at bar, there were several eyewitnesses, and as related by defense counsel, the evidence against Petitioner was significant. Witnesses observed that Petitioner was driving improperly or erratically immediately prior to the accident, and he exited the vehicle after the crash. Similar to the circumstances

- 25 -

in Park, an officer personally observed Petitioner and detected the odor of alcohol.  Thus, even in the absence of any statements by Petitioner, a motion to dismiss the information or motion to suppress would not have been successful.

The trial court relied on the applicable two-pronged Strickland standard and recognized that in a no contest plea case, a petitioner has the burden to show that there is a reasonable probability that, but for counsel's errors, he would not have pled no contest and would have insisted on going to trial.  In this instance, the court held that counsel's performance was reasonably effective because, even if counsel had filed a motion to dismiss or a motion to suppress, the motion would not have been granted due to the eyewitnesses' testimony.  The report does not reflect that Officer Young relied upon immunized statements protected by the accident report privilege.  Furthermore, the court credited Mr. Shorstein's testimony that he informed Petitioner of the immunity or traffic report privilege, and Petitioner decided to go through with the plea proceeding and not pursue pretrial motions. Ultimately, the trial court concluded that Petitioner failed to show deficient performance by counsel or that the plea was involuntary.  Ex. 18 at 294-96.

Petitioner has failed to advance a persuasive argument that counsel's actions can be construed as conduct outside the wide range of professional representation.  Further, Petitioner has not shown prejudice because he has not established that, if counsel had

- 26 -

filed pretrial motions, there is a reasonable probability that the outcome of the proceedings would have been different.  Indeed, in this instance, the trial court said that a motion to dismiss or a motion to suppress would not have been meritorious.  Thus, in the present case, the Court concludes that there has been no showing of prejudice since Petitioner has failed to establish that the filing of pretrial motions would have produced a different result.

In conclusion, not only has Petitioner failed to show deficient performance, he has failed to show that he was prejudiced by counsel's performance.  Also, he has failed to establish that his plea was involuntary.  Petitioner is not entitled to relief on grounds 2A and 2B of the Amended Petition.  The state court's ruling is well-supported by the record and by controlling case law. Deference under AEDPA should be given to the state court's decision to deny grounds 2A and 2B.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. 10) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Amended Petition, **the Court denies a certificate of appealability**.[7]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of September, 2015.

_____
BRIAN J. DAVIS
United States District Judge

sa 9/18
c:
Counsel of Record

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

- 28 -